IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | Chapter 11 |
| § | Jointly Administered Under |
| DEEP MARINE HOLDINGS, INC. et al., § | Case No. 09-39313-H1-11 |
| Debtors. § | |
| § | |
| § | |
| OFFICIAL COMMITTEE OF § | |
| UNSECURED CREDITORS, § | |
| Plaintiffs, § | |
| § | |
| v. § | Adversary No. 10-_____ |
| § | |
| FLI DEEP MARINE LLC, BRESSNER § | |
| PARTNERS LTD., LOGAN LANGBERG, § | |
| HARLEY LANGERG, DEEPWORK, INC., § | |
| Defendants. § | |

**COMPLAINT FOR SUBORDINATION UNDER 11 U.S.C. § 510(b) OR IN THE ALTERNATIVE UNDER 11 U.S.C. § 510(c)**

TO THE HONORABLE MARVIN P. ISGUR, UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") in the above referenced, jointly administered Chapter 11 cases (the "Cases"), files this Complaint for Subordination Under 11 U.S.C. § 510(b) Or In The Alternative Under 11 U.S.C. § 510(c) (the "Complaint") against claims asserted by FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg, Harley Langberg, and Deepwork, Inc. (collectively, "Defendants"). In support of the Complaint, the Committee respectfully states as follows:

**Summary**

1. This Complaint seeks to have the court subordinate the claims of former shareholders of the Debtor below those of general unsecured creditors under 11 U.S.C. § 510(b) because their claims are claims for damages relating to the purchase of stock, or rescission of

purchase of stock. Alternatively, 11 U.S.C. §510(c) permits subordination on any equitable ground.

## Parties

2.  Plaintiff is the Official Committee of Unsecured Creditors, appointed pursuant to 11 U.S.C. § 1102 on December 15, 2009, by the United States Trustee (the "U.S. Trustee") in these Cases [Main Case, Docket #24]. The Committee initially consisted of the following members: (a) Aramark US Offshore Services, LLC; (b) Ocean Services, LLC; and (c) NREC Power Systems, Inc. On February 5, 2010, the U.S. Trustee appointed the following additional members to the Committee [Main Case, Docket #183]: (a) Huisman-Intrepid Services LLC; (b) B & J Martin, Inc.; and (c) BNA Marine Services, LLC.

3.  Defendants are former minority shareholders of Deep Marine Technology Incorporated ("DMTI"), a Debtor in the Cases, and can be served as follows:

> (a) Defendant FLI Deep Marine LLC may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.
>
> (b) Defendant Bressner Partners Ltd. may be served with process by serving Jeffrey Langberg, 575 Madison Avenue, 10th Floor, New York, New York 10022.[1]
>
> (c) Defendant Logan Langberg may be served with process by serving Jeffrey Langberg, 575 Madison Avenue, 10th Floor, New York, New York 10022.

---

[1] Defendant Bressner Partners Ltd. appears to be an Isle of Jersey corporation whose registered agent is not readily available at this time. However, Bressner Partners Ltd., along with Logan Langberg and Harley Langberg, provided the service address of Jeffrey Langberg in their demands for appraisal. Consequently, at this time, given the timely relief requested herein, the Committee seeks to serve process on Bressner Partners, Ltd., along with Logan Langberg and Harley Langberg via Jeffrey Langberg. As further means to give full notice of this Original Complaint and Application, the Debtors are serving the same by electronic mail on the Defendants' attorneys of record as listed in the Delaware Actions (as defined herein).

Austin 57284v2     2

(d) Defendant Harley Langberg may be served with process by serving Jeffrey Langberg, 575 Madison Avenue, 10th Floor, New York, New York 10022.

(e) Defendant Deepwork, Inc. may be served with process by serving its registered agent, CT Corporation System, 350 N. Saint Paul Street, Dallas, Texas 75201.

### Jurisdiction and Venue

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

### Litigation Background

5. On October 26, 2009 and October 30, 2009, Defendants initiated prepetition shareholder derivative lawsuits against former or current officers, directors, or shareholders of the Debtors,[2] and/or their affiliates. These derivative matters are currently pending in the Delaware Court of Chancery under Case Nos. 5020-VCS and 5032-VCS (collectively, the "Delaware Claims"). True and correct copies of both complaints from the Delaware Claims are attached hereto as *Exhibit A*.

6. The Delaware Claims were preceded by nearly identical litigation in Delaware and Texas involving many of the same parties. Paul McKim, a named defendant in both of the Delaware Claims, brought many of the same claims asserted there as explicit derivative causes of action in Texas state court in October 2008 (the "Texas Complaint") (a true and correct copy of the petition from the Texas Complaint is attached hereto as *Exhibit B*).

---

[2] Deep Marine Holdings, Inc.; Deep Marine Technology Incorporated; Deep Marine 1, LLC; Deep Marine 2, LLC; Deep Marine 3, LLC; and Deep Marine 4, LLC (collectively, the "Debtors").

7.      Shortly thereafter, on November 3, 2008, FLI Deep Marine LLC and Bressner Partners Ltd., two of the Defendants named herein, filed a complaint in the Delaware Court of Chancery derivatively on behalf of the Debtors and alleged substantially similar causes of action to the Delaware Claims.[3]

8.      On December 4, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101, *et seq.*  The Debtors continue to operate their business and manage their property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

9.      On January 21, 2010, this Court temporarily enjoined Defendants from further prosecuting the Delaware Claims [Adversary Case #10-03026, Docket #16].

**Further Background**

10.     In the Delaware Claims, Defendants alleged that they originally purchased shares of DMTI in early 2002.  ***Ex. A*** at ¶¶1, 132.  They further alleged that their investment totaled $1.73 million.  *Id.*

11.     Thereafter, on March 27, 2008, all shares in DMTI were exchanged for shares of Deep Marine Holdings, Inc. ("DMHI"), DMTI's parent, at a rate of 380 shares of DMHI stock for each share of DMTI stock.  ***Ex. A*** at ¶1.

12.     On July 1, 2009, DMHI commenced and concluded a short-form merger pursuant to section 253 of the Delaware General Corporation Law with NKOC, Inc., a Delaware corporation.  ***Ex. A*** at ¶5. As minority shareholders, Defendants were to be cashed out of their DMHI stock at a price of $0.01 per share, or approximately $22,000 for all minority

---

[3] A true and correct copy of the complaint is attached hereto as ***Exhibit C***.

shareholders, including, but not limited to, Defendants. ***Ex. A*** at ¶132. Defendants' investment as of the merger totaled $9,380. *Id.*

13. The sale of Defendants' minority shares for less than $10,000 is the basis of the Delaware Claims, which seek a "determination of the fair value" of the shares, damages for the "losses [Defendants] have suffered," and attorney fees and expenses. ***Ex. A*** at ¶188. In support of such relief, the Delaware Claims include nine causes of action ranging from breaches of fiduciary duty, unjust enrichment, and aiding and abetting a breach of fiduciary duty, to claims for wrongful equity dilution and accounting. ***Ex. A*** at ¶¶137-185.

### Count One: Mandatory Subordination Under 11 U.S.C. § 510(b)

14. The allegations contained in paragraphs 1 through 13 are hereby incorporated by reference as if fully set forth herein.

15. Under Section 510(b) of the Bankruptcy Code, shareholder claimants cannot elevate their equity interests above the level of general unsecured claims. In full, the statute states as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b)

16. "Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets." *SeaQuest Diving LP v. S & J Diving Inc. (In re SeaQuest Diving LP)*, No. 08-20516, 2009 U.S. App. LEXIS 18056, at *11 (5th Cir. Aug. 12, 2009) (quoting *In re Am.*

*Wagering, Inc.*, 493 F.3d 1067, 1071 (9th Cir. 2007)).  Indeed, where a claimant is a former shareholder of a debtor, subordination may be warranted.  *See Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 525 (5th Cir. 2004); *Consol. FGH Liquidating Trust v. Marler (In re Consol. FGH Liquidating Trust)*, No. 1:07CV540-LG-JMR, 2007 U.S. Dist. LEXIS 73721, at *9 (S.D. Miss. Oct. 2, 2007).

17. For the case at bar, *SeaQuest Diving LP* is directly on point.  The Fifth Circuit categorized the appropriate claims for subordination under 510(b), specifically identifying the "rescission category" for a claim arising from rescission of a purchase or sale of a security of the debtor and the "damages category" for a claim for damages arising from the purchase or sale of a security of the debtor.  2009 U.S. App. LEXIS 18056 at *11.  Moreover, the *SeaQuest Diving LP* court held that the scope of both categories "should be construed consistently" and "extends to claims arising from post-issuance conduct."  *Id.* at 17.  Thus, subordination under § 510(b) for both categories is beyond claims based on fraud in the issuance of securities.  *Id.* at 23.

18. Defendants claim Debtors' conduct "virtually wiped out" Defendants' investment as former minority shareholders.  *Ex. A* at ¶¶2, 8.

19. The Delaware Claims factually dispute the Debtors' July 11, 2009 merger notice and appraisal thereto (*Ex. A* at ¶¶5, 8), specifically that the notice omitted material information such that the Defendants could not determine whether to accept the merger or seek appraisal rights.  *Ex. A* at ¶¶133-34.

20. The Delaware Claims include causes of actions against the Debtors for appraisal rights, wrongful dilution and accounting.  *Ex. A* at ¶¶137-148, 183-187.

21. In connection with the Defendants' rescission of the sale, Defendants seek damages, attorney fees and expenses.  *Id.* at ¶188.

22.     *SeaQuest Diving LP* described a three-factor public policy rationale for why investor claims should be subordinated below unsecured creditor claims:

> (a)  Investors bargain for their risk in receiving equity from the debtor, instead of debt, and anticipate a potentially unlimited share of future profits, thereby having greater financial expectations than creditors.
>
> (b)  Unsecured creditors rely on investors' contributions as an equity cushion.
>
> (c)  Under the absolute priority rule, unsecured creditors can never share the assets of the bankruptcy estate *pari passu* with disaffected investors, because the unsecured creditors never bargained for an equity stake in the debtor.

2009 U.S. App. LEXIS 18056 at *12-13, 17-18.

23.     The unsecured creditors of the Debtors never bargained for an equity stake in the Debtors. The unsecured creditors presumably relied on Defendants, as investors, for their equity contributions in 2002. It would violate the policy considerations behind the absolute priority rule for Defendants to share the assets of the Debtors' estates *pari passu* with unsecured creditors.

### **Count Two: Equitable Subordination Under 11 U.S.C. § 510(c)**

24.     The allegations contained in paragraphs 1 through 23 are hereby incorporated by reference as if fully set forth herein.

25.     To the extent that this Court does not find mandatory subordination under Section 510(b) appropriate, the Committee asserts the Court should subordinate the Delaware Claims under Section 510(c) of the Bankruptcy Code for equitable reasons.

26.     Pursuant to Section 510(c)(1), a court may, under principles of equity, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim.

27.     Equitable subordination under Section 510(c) is warranted. It would be inequitable to allow Defendants to receive any distribution or treatment in these cases, under a plan of reorganization or otherwise, on a pro rata basis with the allowed claims of general

unsecured creditors. The Defendants were investors. The unsecured creditors who were not investors have a greater expectation of being paid.

WHEREFORE, PREMISES CONSIDERED, the Committee prays that Defendants be cited to appear and answer and that this Court:

1) enter judgment subordinating the Delaware Claims for all purposes in these cases under 11 U.S.C. § 510(b);

2) or alternatively, enter judgment subordinating the Delaware Claims for all purposes in these cases under 11 U.S.C. § 510(c); and

3) grant such other and further relief as is just and proper.

DATED: March 8, 2010.

> Respectfully submitted,
>
> MCKOOL SMITH P.C.
>
> By: */s/ Hugh M. Ray, III*
> HUGH M. RAY, III
> State Bar No. 24004246
> NICHOLAS ZUGARO
> State Bar No. 24070905
> 600 Travis, Suite 7000
> Houston, Texas 77002
> Telephone: (713) 485-7300
> Facsimile: (713) 485-7344
>
> ATTORNEYS FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS